Filed 1/10/22  S.M. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| S.M., | |
| Petitioner, | E077990 |
| v. | (Super.Ct.Nos., J280252, J280254, J280255 & J281229) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | |
| Respondent; | OPINION |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS for extraordinary writ.  Steven A. Mapes, Judge.

Petition denied.

Tim L. Guhin for petitioner.

No appearance for respondent.

Steven O'Neill, Interim County Counsel, and David Guardado, Deputy County

Counsel, for Real Party in Interest.

1

The juvenile court terminated petitioner S.M.'s (mother) reunification services and set the Welfare and Institutions Code section 366.26 hearing.[1] Mother has filed a petition for extraordinary writ contending insufficient evidence supported the juvenile court's determination that it would be detrimental to return the children to mother's custody. We deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 15, 2018, personnel from real party in interest, San Bernardino County Children and Family Services (the department), received a referral alleging physical abuse of J.J. (born Dec. 2017) by mother. The reporting party alleged that mother hit J.J. with an open hand on the face and slapped him on the back. On November 23 and December 7, 2018, the social worker attempted to meet with the family at their home; she knocked several times but received no answer.

On February 6, 2019, the social worker obtained information regarding mother from a benefits eligibility worker. Mother had reported being homeless. The information reflected that S.M. (born Jan. 2012) was attending a specific elementary school. On February 8, 2019, the social worker went to the elementary school and met with S.M.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

S.M. reported the family was staying at a motel. S.M. said mother and D.M. (father)[2] would fight with their hands and words. Father would slap mother in the face. S.M. would try to get in between them to help mother. S.M. reported that mother would hit S.M. with objects, which would leave bruises.

Mother contacted the social worker that day; mother was irate at the social worker for contacting S.M. at school; mother directed profanity at the social worker. Mother reported the family was living at a local motel. Mother said she was bipolar and suffered from anxiety. The social worker thereafter made several unsuccessful attempts to contact the family at several motels.

On March 6, 2019, the social worker again made contact with S.M. at school; however, S.M. was closed-off and quiet during the interview. On March 14, 2019, the social worker obtained a detention warrant. The warrant was served on mother at S.M.'s school. Mother became irate, cursing, yelling, screaming, and balling her fist; mother punched some metal filing cabinets. S.M. reported that mother had told her to lie and say they were living in a motel. S.M. again reported domestic violence between mother and father. At that time, the social worker had no information regarding where mother's three other children were living.

---

[2] All four children who were the subjects of the initial juvenile dependency petitions had separate fathers. Father is the father of J.J. and N.J., who was born during the pendency of the proceedings. Father is the only father who participated in the proceedings other than F.M.'s father, who obtained custody of F.M. and had the petition dismissed as to F.M. None of the fathers are a party to this petition for extraordinary writ.

F.M.'s (born Oct. 2016) father said F.M. had been living with him for the last two weeks. He said F.M. had lived with him previously for six months. He had been trying to obtain legal custody of her. Paternal relatives of A.M. (born Apr. 2014) reported having custody of A.M. but refused to give their address. Father had an extensive criminal history, including numerous possession of marijuana, domestic violence, and burglary offenses.

Department personnel filed juvenile dependency petitions alleging mother had anger issues, engaged in domestic violence in the presence of the children, had untreated mental health issues, and lived an unsafe and unstable lifestyle. They alleged father engaged in domestic violence, lived an unsafe and unstable lifestyle, had an extensive criminal record, and had a history of substance abuse.[3] On March 19, 2019, the court detained all of the children except F.M., who was left in her father's custody.

In the jurisdiction and disposition report filed April 4, 2019, the social worker recommended the court remove the children from mother and the various fathers, and provide reunification services for mother and father. On March 28, 2019, mother reported being homeless since August 2017. She was now seven and a half months pregnant. Mother said she was not taking her prescribed psychotropic medication; she said she went off them when she became pregnant. Mother tested positive for marijuana on March 19, 2019; she reported smoking twice daily for her depression and anxiety. Mother reported having anger issues her whole life.

---

[3] No copy of a juvenile dependency petition for F.M. is included in the record.

S.M. reported mother had anger problems; she wanted mother to stop yelling so much; S.M. said mother would hit S.M. with mother's hands, shoes, and father's belt. S.M. reported that the family was homeless. S.M. said she previously lived with F.M.'s father, who was nice.

The whereabouts of A.M.'s father was unknown. S.M.'s father was located in Las Vegas; due to his lengthy criminal history, the social worker recommended the court deny him reunification services pursuant to section 361.5, subdivision (b)(5). Counsel for F.M.'s father was seeking dismissal of the dependency proceedings with family law orders.

Father denied any domestic violence with mother but admitted having a history of domestic violence with the mother of his three other children. Father tested positive for marijuana on March 19, 2019.

On April 9, 2019, the court sent the matter to mediation. Mother admitted the mental health and domestic violence allegations. The department agreed to dismiss the remaining allegations. The department and mother agreed to a disposition that would include reunification services to include components for individual counseling, substance abuse treatment, random drug testing, domestic violence counseling, a psychiatric evaluation and monitoring, anger management, and parenting. On May 16, 2019, the court sustained the remaining allegations, removed the children from parents' custody, and granted mother and father reunification services.

On June 3, 2019, the social worker reported that mother had given birth to N.J. (born May 2019). Mother gave the social worker permission to take N.J. into protective

5

custody. Department personnel filed a juvenile dependency petition as to N.J. mirroring the allegations in those previously filed and sustained on behalf of the other children. On June 4, 2019, the court detained N.J.

In the jurisdiction and disposition report filed June 20, 2019, the social worker recommended the court remove N.J. from parents' custody and provide them reunification services. Mother reported that she and father were no longer together. She said she was now taking her medication. Mother had enrolled in the anger management, individual therapy, parenting education, and substance abuse components of her case plan. On June 25, 2019, the court found the allegations in the petition as to N.J. true, removed him from parents' custody, and granted them reunification services.

In the status review report filed November 13, 2019, as to S.M., A.M., and J.J., the social worker recommended the court continue parents' reunification services. Mother had completed 11 of the 12 classes in her anger management program. She had completed her parenting program. Mother had not completed her individual therapy; she started attending regularly, but around September 2019, she started missing appointments and eventually stopped attending altogether. Mother had completed a domestic violence program. She had been dropped from her outpatient program for too many absences.

Mother tested negative for controlled substances on May 6 and 17, June 6, July 17 and 30, and August 19, 2019. She failed to test on June 12, September 10 and 16, October 17 and 21, 2019. Father tested positive for marijuana on one date and failed to test on 10 subsequent dates. On November 18, 2019, the court continued parents' reunification services.

6

In a status review report filed December 13, 2019, on behalf of N.J., the social worker recommended the court continue reunification services. The report contained no new information and, instead, recounted what had already been reported in previous reports. On December 18, 2019, the court continued parents' reunification services as to N.J.

In the status review report filed May 19, 2020, as to S.M., A.M., and J.J., the social worker recommended the court terminate parents' reunification services and set the section 366.26 hearing. Father tested positive three times for marijuana and failed to test nine times. Father was not participating in any of his programs.

Mother had not completed her individual therapy or domestic violence/anger management program. Mother tested positive on January 23, February 14, and March 16, 2020; she failed to show for drug testing on November 18 and 21, December 11 and 17, 2019, and January 29, February 7, and March 24, 2020. Personnel at mother's substance abuse program reported that mother was not on their participants' list. Mother was no longer seeing her psychiatrist or taking her medication. Mother failed to visit the children regularly. When visits changed to video calls, mother started to visit the children regularly but missed visits occasionally and did not request to reschedule them.

In an addendum report filed on August 27, 2020, as to all the children, the social worker recommended terminating parents' reunification services and setting the section 366.26 hearing as to all the children. Mother had enrolled in a new substance abuse program on July 7, 2020, and had tested positive for marijuana that day. She tested positive for marijuana again on July 28 and August 12, 2020. Mother failed to test on

April 27, May 12 and 19, June 11 and 17, and August 4, 2020. She tested negative on August 24, 2020. Mother had not completed her individual counseling.

At the 12-month review hearing on August 27, 2020, the department changed its recommendation to continuing reunification services and setting the section 366.22 hearing. The court continued reunification services and set the section 366.22 hearing.

In the status review report filed on September 14, 2020, the social worker recommended the court terminate reunification services and set the section 366.22 hearing. Father had maintained no contact with the department; the department no longer had a telephone number for father. Father had not participated in any of his services.

Mother had not completed her substance abuse program. Mother's substance abuse counselor stated that mother was likely to complete the six-month program in February 2021. Mother tested positive for marijuana on August 26, 2020. She tested negative on August 24 and September 8, 2020. Mother had failed to complete her individual therapy; she was currently participating in individual therapy and had participated in three of four sessions. Mother was no longer seeing a psychiatrist or taking her prescribed medication. According to mother, her "current program is working with her to get her medication." Mother regularly visited with children but occasionally missed visits. She did not request to reschedule missed visits. Mother "has not been successful in progressing visitation toward unsupervised and/or extended visits. She has had significant visitation setbacks that have required increasing supervision due to safety concerns for the children."

In an October 19, 2020, information for the court report, the social worker reported that mother had completed eight sessions of individual therapy. The therapist "doubled up" on anger management with mother, helping her to identify her triggers and become more mindful of her emotions. Mother tested positive for tetrahydrocannabinol (THC) on July 7 and 28, and August 12, 2020. She tested negative on August 24, September 7, 21, 28, and 30, October 2, 6, 7, and 20, 2020. Mother was scheduled to complete her substance abuse program in January 2021.

At the 18-month review hearing on November 2, 2020, mother's therapist testified that mother had completed all 12 classes of her anger management program. She completed all 12 classes of her parenting course. Mother completed the first eight sessions of individual therapy. Eight more sessions had been requested. Mother completed six of those. Thus, mother had completed 14 out of 16 sessions. Mother's therapist testified that mother had "more than met the requirements" as far as anger management, parenting, and individual counseling components of her case plan. Mother had dramatically improved. She had learned to use coping skills, calmed more easily, and her anxiety levels had decreased. The therapist had diagnosed mother with a learning disability, which may have affected mother's ability to complete her services. However, the therapist had never discussed mother's learning disability with the social worker.

After hearing the therapist's testimony and discussing the issue with counsel off-the-record, the court determined that "because of the learning disability that was recently discovered, that we would give Mom [six] more months of services . . . . The learning disability is the real issue, and it was just discovered. I wouldn't find a lack of reasonable

9

services. I don't think that is the case here. Honestly, it is more of an issue of doing justice for the family."

Counsel for the department noted: "The social worker indicated to me that she was aware of [the learning disability], and that it was addressed by that agency early on when the mother did her first round of counseling with them because the mother informed the social worker that at the agency, they were helping her learn to read and write. [¶] . . . [¶] So that was being addressed since 2019 . . . . [¶] . . . [¶] It was not as focused as what [the therapist] is doing [now]."

The court observed: "Still, it gives me the same result. It would be an unduly harsh outcome to cut off what now is working. I think that would be unduly harsh for the kids." The court terminated parents' reunification services, found that it would be detrimental to return the children to mother's custody, and offered mother six more months of services under a permanent plan.

In the status review report filed April 27, 2021, the social worker recommended reunification services under the permanent plan be terminated and that the court set the section 366.26 hearing. Mother had completed a six-month outpatient substance abuse program, 16 sessions of individual counseling, 21 sessions in an anger management program, a parenting education course, and a domestic violence program. She tested negative for controlled substances on November 17 and December 14, 2020, and March 1 and 25, 2021. Mother had weekly, three-hour, unsupervised visits with the children at the department's offices.

Mother failed to show for testing on December 31, 2020, and January 8, 13, and February 10, 2021. She tested positive for barbiturates on December 14, 2020, and February 24, 2021. During one visit, mother called father to participate via video; mother said she did not know she was not supposed to supervise visits with father; however, the social worker had informed father his visits could not be supervised by mother. During another visit, mother took J.J. away from the caregiver while the caregiver was checking him in for the visit; the caregiver took J.J. back; mother "became upset and started berating the caregiver telling her that [J.J.] is her son and not the caregiver's."

In an information for the court report filed July 15, 2021, the social worker reported that mother had missed individual therapy sessions on June 28 and July 2, 2021. Mother had weekly visitation with the children, which went "well without any reported concerns." Mother tested negative on May 6 and 24, and June 18 and 22, 2021. The social worker reported that "mother has successfully completed the Court ordered services and she has shown benefit from those services."

In a September 8, 2021, information for the court report, the social worker reported that mother had missed another individual therapy session on June 21, 2021. Mother was discontinued from therapy for having missed three appointments. The social worker referred mother again for individual therapy, and she started seeing her new therapist on August 25, 2021. Mother tested negative on July 16 and 20, and August 3, 2021.

After a visit on July 19, 2021, J.J. showed the social worker a picture of he and father, which had been taken during the visit. Mother said that father had just happened

11

to be at the location of the visit.  She reported asking father to leave.  S.M. and A.M. reported that "they do not keep track or are not able to indicate the number of times [father] has attended" visits.

At the hearing on October 22, 2021, father testified that the last time he had seen N.J. and J.J. was on July 19, 2021, when he was at the same place as mother and the children.  He and mother do not talk with one another.  Father said he was at the same location with his other children.  J.J. ran up to him and wanted a picture.  Father left immediately thereafter.

Mother testified that father just appeared at the location of the visit on July 19, 2021; she had no idea he was going to be there.  Mother knew that father was not allowed at visits.  She allowed J.J. to take a picture with father.  Mother then talked father into leaving.  She told him his presence was not allowed and that by being there he was endangering her unsupervised visitation.  Father never appeared at any other visit.  Mother was not in a relationship with father and had no other contact with him.

Mother testified she had taken 22 anger management classes.  She had just been approved for housing.

The court found mother had a "protective-capacity issue" by not realizing the risk posed to the children by father, who had not even participated in services.  The court also found concerning the fact that mother did not report father's appearance at the July 19, 2021, visit to the department.  The court terminated mother's reunification services.  The court concluded by a preponderance of the evidence that "[i]t would be a detriment to return the children to Mother. . . .  [¶] . . .  The mother has made great progress.  She

appears to be a different person, but there are still these underlying protective issues that are there. These things that haven't been fully addressed that constitute a risk to the children." The court set the section 366.26 hearing.

## II. DISCUSSION

Mother contends insufficient evidence supports the juvenile court's finding that it would be detrimental to return the children to her custody. The department maintains that because mother's nonstatutory services were discretionary under the permanent plan, the court was not required to render a detriment finding. Thus, the department argues mother's claim is noncognizable in this petition. The department additionally contends that by failing to appeal the juvenile court's detriment finding rendered when it terminated her reunification services on November 2, 2020, mother has forfeited the claim. We hold that even assuming the court was required to render a detriment finding and mother has not forfeited that issue, sufficient evidence supports the court's ruling that it was detrimental to return the children to mother's custody.

Section 366.25 governs cases in which reunification services have been extended to 24 months. At the 24-month review hearing, the child must be returned to his parent, "unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.25, subd. (a)(1).) The department has the burden of establishing detriment. (*Ibid.*) "The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return

13

would be detrimental." (*Ibid.*) If the child is not returned to his parents at the 24-month review hearing, the juvenile court must set a section 366.26 hearing. (§ 366.25, subd. (a)(3).)

"In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' [Citation.] The determinations should 'be upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.' [Citations.] Uncontradicted testimony rejected by the trial court '"cannot be credited on appeal unless, in view of the whole record, it is clear, positive, and of such a nature that it cannot rationally be disbelieved."'" (*In re Caden C.* (2021) 11 Cal.5th 614, 640.)

Here, despite the social worker's contention that mother had completed her reunification services, the record reflects that mother had still failed to complete the individual counseling component of her services despite 24 months of services. The therapist who testified at the 18-month hearing, and whose testimony was responsible for the additional six months of services, had testified that mother had not yet completed the individual counseling component of her services. The court had granted mother an additional six months of services in order to address the learning disability with which the therapist had diagnosed mother; by implication, that learning disability would be addressed by individual counseling. However, a later information for the court report, coming after the 24-month status review report, reflected that mother had missed three recent individual therapy sessions and had been discontinued from therapy. Thus, mother

14

had failed to complete the individual therapy component of her service plan, the only real basis for having her services continued for the additional six months.

Moreover, mother had still failed to complete the substance abuse testing component of her case plan. The 24-month status review report reflected mother had twice tested positive for barbiturates. She had failed to show for testing on another four occasions. Thus, mother had failed to complete the substance abuse testing component of her case plan. Therefore, mother's failure to complete her court-ordered treatment plan was prima facie evidence that returning the children to mother was detrimental to their safety, protection, or physical or emotional well-being. (§ 366.25, subd. (a)(1).)

Furthermore, mother put the children at risk by allowing father around the children. The court sustained allegations that father had engaged in domestic violence, lived an unsafe and unstable lifestyle, had an extensive criminal record, and had a history of substance abuse. Other than testing positive for drugs on numerous occasions, father had failed to participate in services at all. Yet, during the last reporting period, mother allowed father around the children. Mother allowed father to participate in a video visit with the children. During another visit, father happened to be at the same location mother had taken the children; mother allowed father to have contact with J.J.; mother failed to report the contact to the social worker. The only reason the social worker found out about the contact was that J.J. told the social worker and showed her a picture of J.J. and the father.

The court's findings that mother had a "protective-capacity issue" by not realizing the risk posed to the children by father and by not reporting contact between J.J. and

15

father was supported by substantial evidence.  In fact, a rational inference of the evidence and the court's findings is that mother may have allowed further contact with the children.  S.M. and A.M. had reported that "they do not keep track or are not able to indicate the number of times [father] has attended" visits, which indicates father had more contact with the children than just the one video and one in-person visit.  Thus, the court's conclusion that it "would be a detriment to return the children to Mother," was supported by evidence that mother had failed to complete her service plan and the "underlying protective issues" mother had with allowing the children visitation with father.

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.

16